PAUL O. PERRY, Employee v. HIBRITEN FURNITURE COMPANY, Employer AND LIBERTY MUTUAL INSURANCE CO., Carrier

No. 27

(Filed 28 November 1978)

1. **Master and Servant § 96.1— workmen's compensation—award for permanent partial disability—sufficiency of evidence**

    Evidence was sufficient to support the findings of the Industrial Commission that plaintiff sustained a fifty percent permanent partial disability or loss of use of his back and that the healing period ended on or before 25 March 1976.

2. **Master and Servant § 72— workmen's compensation—back injury—partial disability**

    The language of G.S. 97-31 compels the conclusion that if by reason of a compensable injury an employee is unable to work and earn any wages he is totally disabled, G.S. 97-2(9), and entitled to compensation for permanent total disability under G.S. 97-29 unless, as in this case, all his injuries are included in the schedule set out in G.S. 97-31.

3. **Master and Servant §§ 65.2, 94— workmen's compensation—back injury compensated—evidence of injury to legs—failure to make findings**

    Where there was medical testimony that plaintiff suffered leg pain related to his back injury which was compensable under the Workmen's Compensation Act, one doctor testified that plaintiff had absent ankle jerk on the left "and some numbness of the lateral calf on the left," and plaintiff testified that he was currently suffering pain in his back and legs, that his legs hurt when walking or driving, the Industrial Commission erred in failing to make any attempt to elicit medical evidence or to find facts as to whether plaintiff had suffered any permanent loss of use of either or both legs.

    Justice BRITT took no part in the consideration or decision of this case.

ON certiorari to review decision of the Court of Appeals affirming award of the North Carolina Industrial Commission, 35 N.C. App. 518, 241 S.E. 2d 697 (1978).

This is a workmen's compensation case. The record reveals that plaintiff was injured under compensable circumstances on 17 April 1973 while working for defendant Hibriten Furniture Company. The Industrial Commission awarded compensation for temporary total disability until plaintiff reached maximum improvement, *i.e.*, until the end of the healing period. The case was reset for hearing to determine when the healing period ended and the degree of permanent disability plaintiff had sustained as a result of his injury.

Medical testimony was taken from Drs. Angus McBryde and Donald G. Joyce of Charlotte and Dr. Ted J. Waller of Boone. Plaintiff testified further in his own behalf. Based upon the entire record, including the additional evidence, Deputy Commissioner Shuford found that plaintiff reached the end of the healing period on 25 March 1976 and had suffered a 50 percent permanent partial disability or loss of use of his back. Based thereon, plaintiff was awarded compensation at the rate of $56 per week commencing 25 March 1976, the end of the healing period, and continuing for 150 weeks as provided by G.S. 97-31(23). On plaintiff's appeal, the full Commission affirmed; the Court of Appeals affirmed the full Commission, and we allowed certiorari to review that decision.

*Finger, Watson & di Santi by Donald M. Watson, Jr. and Anthony S. di Santi, attorneys for plaintiff appellant.*

*Hedrick, Parham, Helms, Kellam, Feerick & Eatman, by Edward L. Eatman, Jr., attorneys for defendant appellees.*

HUSKINS, Justice.

Plaintiff contends the Court of Appeals erred in affirming the Industrial Commission's finding that he has sustained only a 50 percent permanent partial disability of the back with compensation after the healing period limited to 150 weeks under the provisions of G.S. 97-31(23). He argues that he is totally disabled and therefore entitled to compensation for permanent total disability under G.S. 97-29. Resolution of this question is determinative of this appeal. We first examine the evidence.

Dr. McBryde, a medical expert specializing in orthopedic surgery, testified:

"I have an opinion satisfactory to myself as to whether or not Mr. Perry's injury will render him permanently disabled. My opinion is, following his two surgeries [laminectomies], and with a possibility of further surgery he's probably unable to carry out gainful employment. . . . I have an opinion satisfactory to myself as to the degree of permanent disability that Mr. Perry will suffer. That opinion is probably within the range of 25, 35% permanent partial disability to the spine.

When a person has a 25, 35% disability of the spine, the activities that he can accomplish are the activities of daily living, which would be all those functions which would enable him to take care of himself. He could possibly do light activities for a limited number of hours in a day, interrupted, perhaps by periods of rest. He could do desk work for limited periods of time, could do errand type activity, particularly if it wasn't a hard labor requiring long time standing. He could do other similar activities interrupted by periods of rest. As for hard labor, pick and shovel, heavy lifting, bending, and getting into small places, I don't think he can do any of these.

. . . I feel that if Mr. Perry did not go through with any further surgery, he had reached maximum improvement when I saw him in February of this year [20 February 1976]."

Dr. Ted J. Waller, a medical expert specializing in orthopedic surgery, testified that he performed the second laminectomy on plaintiff's back, removing bulging intervertebral discs between L-4 and L-5 and between L-5 and S-1. The L-4-L-5 area had been previously operated upon by another physician but a bulging disc was removed by Dr. Waller at both levels. Dr. Waller said his last formal examination of plaintiff was in January 1976 and that plaintiff's last office visit was in July 1976. At all times up to the last visit plaintiff had tenderness in both sciatica notches. The range of motion of his lumbar spine was markedly limited. Straight leg raising produced pain on the back of his legs. In July 1976 plaintiff complained of increased pain, especially in the left

leg. With respect to plaintiff's degree of permanent disability Dr. Waller testified as follows:

> "I have an opinion as to his disability to perform, let's say, manual labor, such as lifting or driving. He is unable to perform manual labors, any sort of heavy lifting, any sort of bending, carrying, long driving, things of this nature."

When asked the percentage of physical loss of use of the back which plaintiff had sustained, Dr. Waller replied: "I would still have to say 75 percent." Dr. Waller admitted on cross-examination that he had written a letter to defense counsel dated 2 June 1976 in which he stated: "For the purpose of the Workmen's Compensation Act, I would rate him as 50% permanent partial disability of the back," but Dr. Waller pointed out that the first sentence of the letter states: "Mr. Perry is having pain in his legs sufficient to cause total disability."

Dr. Donald G. Joyce, a medical expert specializing in orthopedic surgery, testified that he examined plaintiff on 24 March 1976 at which time plaintiff was complaining of low back pain, bilateral leg pain, and gave a history of an on-the-job injury in 1973 while moving a large crate in a furniture factory and of having had two laminectomies. Dr. Joyce found two parallel incisions in the lumbar area caused by previous surgery, marked limitation of motion of the spine of all planes, ankle jerk absent on the left and some numbness of the lateral calf on the left. X-rays were taken "and there was a question of some bony encroachment in the posterior areas of L-4 and L-5." Results from the two laminectomies were poor. With respect to plaintiff's permanent disability, Dr. Joyce stated:

> "In my opinion I felt Mr. Perry warranted a permanent partial disability of 35% of the back. . . . I did state in this written report [of the examination] that the patient is probably disabled from any useful occupation. I do not believe the man can do repetitive lifting of anything over 10 pounds. Further, I do not believe that Mr. Perry would be able to do any strenuous physical activity. . . . I did not recommend any further surgery or any further treatment to Mr. Perry . . . but I feel something could be considered in the way of pain relief to this individual, but I, apparently, haven't anything to offer him."

Plaintiff testified he completed the 8th grade in school in 1950, had no formal training, left the farm to go to work for Brown Brothers Construction Company doing common labor, and went to work in a furniture factory in 1963 in Lenoir. In 1965 or 1966 he began work for Hibriten Furniture Company and worked there from that date until the date of the accident involved in this case.

With respect to the injury, plaintiff testified he was currently suffering pain in his back and legs; that his legs hurt when he walks or drives a motor vehicle; that since his injury he can no longer lift or bend over without hurting; that he sleeps poorly due to the pain.

It now becomes our duty to apply pertinent legal principles to the evidence, the findings and the conclusions of the Industrial Commission.

[1]   We first note that jurisdiction of appellate courts on appeal from an award of the Industrial Commission is limited to the questions (1) whether there was competent evidence before the Commission to support its findings and (2) whether such findings support its legal conclusions. *McRae v. Wall*, 260 N.C. 576, 133 S.E. 2d 220 (1963); *Thomason v. Cab Co.*, 235 N.C. 602, 70 S.E. 2d 706 (1952); *Henry v. Leather Co.*, 231 N.C. 477, 57 S.E. 2d 760 (1950). If the findings of fact are supported by competent evidence and are determinative of the questions at issue in the case, appellate courts must accept such findings as final truth and then determine whether they justify the legal conclusions of the Commission. In no event may the appellate court consider the evidence for the purpose of finding the facts for itself. *Pardue v. Tire Co.*, 260 N.C. 413, 132 S.E. 2d 747 (1963). If the findings of fact of the Commission are insufficient to enable the court to determine the rights of the parties upon the matters in controversy, the proceeding must be remanded for the Commission to make proper findings. *Brice v. Salvage Co.*, 249 N.C. 74, 105 S.E. 2d 439 (1958). Applying these principles to the testimony of Drs. McBryde, Waller and Joyce, considered collectively, we hold that the evidence supports the findings of the Industrial Commission that plaintiff sustained a 50 percent permanent partial disability or loss of use of his back and that the healing period ended on or before 25 March 1976. We are bound by those findings even

though the evidence would have supported a finding of disability to a greater or lesser degree.

We next consider plaintiff's contention that he is entitled to compensation for permanent total disability under G.S. 97-29.

The term "disability," when used in the Workmen's Compensation Act, "means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." G.S. 97-2(9).

We said in *Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978), that if "an employee's age, education and work experience are such that an injury causes him a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the incapacity which he or she suffers, and not for the degree of disability which would be suffered by someone with superior education or work experience or who is younger or in better health." *See* Larson, Workmen's Compensation, § 57.51, at nn. 96-97 (1976), and cases collected therein. Even so, when all of an employee's injuries are included in the schedule set out in G.S. 97-31, as here, his entitlement to compensation is exclusively under that section. *Little v. Food Service, supra.* This is true because G.S. 97-31, in pertinent part, provides:

> "In cases included by the following schedule the compensation in each case shall be paid for disability during the healing period and in addition the disability shall be deemed to continue for the period specified, *and shall be in lieu of all other compensation, including disfigurement . . . .*" (Emphasis added.)

*See Watts v. Brewer*, 243 N.C. 422, 90 S.E. 2d 764 (1956); *Stanley v. Hyman-Michaels Co.*, 222 N.C. 257, 22 S.E. 2d 570 (1942). *Compare Larson, supra,* § 58.20, n. 34 *et seq.*

[2] The language of G.S. 97-31 above quoted compels the conclusion that if by reason of a compensable injury an employee is unable to work and earn *any* wages he is totally disabled, G.S. 97-2(9), and entitled to compensation for permanent total disability under G.S. 97-29 *unless all his injuries are included in the schedule set out in G.S. 97-31.* In that event the injured employee is entitled to compensation exclusively under G.S. 97-31

regardless of his ability or inability to earn wages in the same or any other employment; and such compensation is "in lieu of all other compensation, including disfigurement." *Little v. Food Service, supra.* "We think it is elementary where an award is properly made under specific schedules and the Commission has found as a fact that the employee is not totally and permanently disabled, as in the instant case, the Commission is only required to find the percentage of disability of the member or members affected." *Stanley v. Hyman-Michaels Co., supra.*

For the reasons given the decision of the Court of Appeals affirming the Commission's finding that plaintiff sustained a 50 percent permanent partial disability or loss of use of his back with compensation for that injury limited to 150 weeks as provided by G.S. 97-31(23) is affirmed. Another aspect of the case, however, requires that the proceeding be remanded to the Industrial Commission for further findings.

[3]    Dr. McBryde's testimony tends to show "some drawing-type pain in his [plaintiff's] left leg, which was associated with back pain, he had some previous right leg pain, but this was static at the time that I talked with him." Dr. Waller's testimony tends to show that in July 1976 plaintiff complained of increased pain, especially in his left leg. In a letter to defense counsel dated 2 June 1976 Dr. Waller said, among other things, "Mr. Perry is having pain in his legs sufficient to cause total disability." Dr. Joyce mentioned in his testimony that plaintiff had absent ankle jerk on the left "and some numbness of the lateral calf on the left." Plaintiff testified he was currently suffering pain in his *back and legs;* that his legs hurt when walking or driving. Despite the cumulative evidence with respect to plaintiff's legs, no attempt was made to elicit medical evidence or to find facts as to whether plaintiff had suffered any permanent loss of use of either or both legs.

If plaintiff has suffered any permanent loss of use of either leg, the award must take into account all compensable injuries resulting from the accident. The injured employee is entitled to an award "which encompasses all injuries received in the accident. The employee is required to file but a single claim, and the amount of compensation payable is predicated on the extent of the disability resulting from the accident." *Giles v. Tri-State*

*Erectors,* 287 N.C. 219, 214 S.E. 2d 107 (1975). *Accord, Little v. Food Service, supra; Smith v. Red Cross,* 245 N.C. 116, 95 S.E. 2d 559 (1956). "Until all of an injured employee's compensable injuries and disabilities have been considered and adjudicated by the Commission, the proceeding pends for the purpose of evaluation, absent laches or some statutory time limitation." *Hall v. Chevrolet, Inc.,* 263 N.C. 569, 139 S.E. 2d 857 (1965).

For the reasons stated, the case is remanded to the Court of Appeals for further remand to the Industrial Commission. With respect to plaintiff's legs, that agency will consider the evidence of record and any additional evidence either party may desire to offer, make findings of fact thereon as to the amount of permanent disability or loss of use, if any, of either or both of plaintiff's legs caused by the injury in question. If plaintiff has suffered no loss of use of a leg by reason of his injury, the case is closed. If, in addition to his back injury, he has suffered some loss of use of either or both legs, the Commission shall make findings of fact as to the amount and, within statutory limits, issue an award pursuant to G.S. 97-31(15).

*Affirmed in part and remanded.*

Justice BRITT took no part in the consideration or decision of this case.