HAYWOOD N. WILDER, Employee, Plaintiff v. BARBOUR BOAT WORKS, Employer, and HOME INDEMNITY COMPANY, Carrier, Defendants

No. 8610IC715

(Filed 3 February 1987)

1. **Master and Servant § 68.4— prior injury—N.C.G.S. 97-33—not applicable**

   In a workers' compensation case, N.C.G.S. 97-33 did not apply where plaintiff's preexisting condition did not stem from epilepsy, or from an injury received in the armed services or in the course of other employment, and where plaintiff had received no compensation for the prior injury.

2. **Master and Servant § 69— workers' compensation—prior injury—not limited to recovery for permanent partial disability**

   A workers' compensation claimant who had previously had a total knee replacement and who later injured that knee in an on-the-job accident was not limited to recovery for permanent partial disability under N.C.G.S. 97-31 and could receive compensation for total disability under N.C.G.S. 97-29.

3. **Master and Servant § 69— workers' compensation—partial disability of leg— total disability for work**

   The evidence in a workers' compensation case showed plaintiff to be totally and permanently unable to earn the wages he was receiving at the time of his injury where plaintiff was 59 years old and had a third grade education, and plaintiff's doctor rated the permanent partial disability of the left leg at 15% but testified that plaintiff was totally disabled for a laboring type of job and "probably all gainful work that he's qualified."

4. **Master and Servant § 69.2— workers' compensation—prior injury—total disability—compensable**

   A workers' compensation plaintiff's entire disability was compensable even though a normal person may not have been disabled to that extent, where plaintiff had had knee replacement surgery after a 1977 injury; plaintiff returned to work after a six-month healing period in 1977 and performed his duties satisfactorily until he reinjured the knee in 1983; plaintiff's doctor rated the disability to the left leg after the 1983 injury at 45%, with 15% attributable to the 1983 injury, and the incapacity for work as total; and plaintiff's doctor testified that there was a greater risk of damage with a second prosthesis due in part to extra bone damage during surgery and that replacement of the prosthesis might be impossible if damage were to recur, resulting in amputation.

APPEAL by plaintiff from the Industrial Commission. Judgment entered 14 April 1986. Heard in the Court of Appeals 16 December 1986.

Plaintiff Haywood Wilder received an award for temporary total disability from defendant Barbour Boat Works for a work-

Wilder v. Barbour Boat Works

related injury. The parties were unable to agree as to whether the injury resulted in total disability or permanent-partial disability, and requested a hearing. Deputy Commissioner John Charles Rush heard the case on 10 October 1985. Only plaintiff and his orthopedic surgeon, Dr. Harold M. Vandersea of New Bern, testified at the hearing. The evidence tended to show the following events and circumstances.

Plaintiff was 59 years old at the time of the accident and had a third-grade education. He had been employed by defendant Barbour for 39 years; his duties as a dock master involved physical labor. On 14 December 1983, plaintiff injured his left knee in an on-the-job accident. That same knee had been operated on before; in 1977, Dr. Vandersea performed a total knee replacement. The 1983 injury necessitated removal of the old prosthesis and its replacement with a new model. The surgery caused additional damage to the surrounding bone and further weakened the knee area. Dr. Vandersea estimated that the original damage to the knee in 1977 caused a 30% permanent physical impairment of the left leg, and the second knee replacement in 1983 caused an additional 15% impairment for a total permanent impairment of 45%. It was also Dr. Vandersea's opinion that plaintiff was totally disabled from all work involving physical labor and "probably all gainful work [for which] he's qualified."

On one point, the testimony of the two witnesses diverges. Plaintiff ascribed his original knee replacement in 1977 to a job-related injury. Dr. Vandersea, however, testified that a chronic condition rather than an acute injury necessitated the original surgery. It is undisputed that plaintiff never filed a workers' compensation claim for that injury.

The deputy commissioner found as a fact that the plaintiff sustained a 30% permanent physical impairment of his left leg as a result of the 1977 leg condition and a 15% permanent physical impairment of the left leg as a result of the 14 December 1983 accident, for a total permanent physical impairment of the left leg of 45%. The deputy commissioner concluded as a matter of law that, as a result of the 15% permanent partial disability of plaintiff's left leg due to his work-related injury, plaintiff was entitled to compensation at the rate of $173.33 per week for 30 weeks in accordance with N.C. Gen. Stat. 97-31. Plaintiff appealed to the

Full Industrial Commission; the majority found that G.S. 97-33 obligated defendants to pay only that part of the impairment— 15% — caused by the 1983 injury. The Commission also affirmed the entire opinion of the deputy commissioner and upheld its award. From this denial of compensation for permanent and total disability, plaintiff appealed.

   *Wheatley, Wheatley, Nobles and Weeks, P.A., by Stevenson L. Weeks, for plaintiff-appellant.*

   *Hedrick, Eatman, Gardner & Kincheloe, by Edward W. Hedrick, for defendant-appellant.*

   WELLS, Judge.

[1]   The first issue before this Court is whether the Full Commission erred in finding that the provisions of G.S. 97-33 "show unequivocally that the defendants are obligated to pay only for the disability caused by this accident."

   The Industrial Commission is the sole arbiter of issues of fact. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 290 S.E. 2d 682 (1982). Our review is limited to a determination of whether the Commission's findings are supported by any competent evidence and whether its conclusions of law are supported by those findings. *Id.*

   G.S. 97-33 provides:

   If an employee is an epileptic, or has a permanent disability or has sustained a permanent injury in service in the army or navy of the United States, or in another employment other than that in which he received a subsequent permanent injury by accident, such as specified in G.S. 97-31, he shall be entitled to compensation only for the degree of disability which would have resulted from the later accident if the earlier disability or injury had not existed.

The purpose of the statute is to prevent double recovery. *Pruitt v. Knight*, 289 N.C. 254, 221 S.E. 2d 355 (1976).

   In the case at bar, it is unclear whether the original knee replacement in 1977 was due to a chronic condition or was precipitated by a work-related injury during that year; the plaintiff and

Dr. Vandersea gave different versions of its cause and the deputy commissioner did not resolve the issue in his findings of fact. However, Section 33 cannot apply on either view of the facts. Plaintiff's condition stems neither from epilepsy nor from an injury received in the armed services or in the course of other employment, and since plaintiff has received no compensation for the injury, his case does not fall within the provisions of Section 33. *Pruitt, supra.*

[2] In addition to its conclusion that G.S. 97-33 precluded recovery for more than 15% disability, the Full Commission adopted the deputy commissioner's opinion in its entirety. Plaintiff assigns error to the deputy commissioner's conclusion that plaintiff is entitled to compensation only for permanent partial disability in accordance with G.S. 97-31 and plaintiff asserts that he is totally disabled within the meaning of G.S. 97-29 and is therefore entitled to recovery under those provisions of the statute. We agree.

The threshold issue is whether G.S. 97-31 precludes recovery under any other provision of the statute. That Section provides in pertinent part:

In cases included by the following schedule the compensation in each case shall be paid for disability during the healing period and in addition the disability shall be deemed to continue for the period specified, *and shall be in lieu of all other compensation*, including disfigurement . . . .

(Emphasis ours.) In *Perry v. Furniture Co.*, 296 N.C. 88, 249 S.E. 2d 397 (1978), our Supreme Court addressed the issue in a case where plaintiff had sustained a 50% loss of the use of his back and was "probably disabled from any useful occupation." The Court found the phrase "in lieu of all other compensation" determinative and held that, where all of a plaintiff's injuries are included in the schedule set out in Section 31, he is "entitled to compensation exclusively under G.S. 97-31 regardless of his ability or inability to earn wages in the same or any other employment." *Id.* In *Fleming v. K-Mart Corp.*, 312 N.C. 538, 324 S.E. 2d 214 (1985), the Court made inroads into its rule in *Perry*, but the question was not squarely presented until the recent case of *Whitley v. Columbia Mfg. Co.*, 318 N.C. 89, 348 S.E. 2d 336 (1986). There plaintiff had permanent partial disability of both hands and

was totally disabled as a result. The Supreme Court discussed the history of the "in lieu of" clause, and found that it was originally enacted to prevent compensation for both loss and disfigurement of body parts. The Court reasoned that allowing recovery under Section 29 posed no conflict with the fundamental premise behind that provision, and indeed furthered the purpose of the Act itself to compensate for lost earning ability. Thus, the *Whitley* Court held that Section 29 "is an alternative source of compensation for an employee who suffers an injury which is also included in the schedule" and ruled that the worker may select the more favorable remedy. *Perry* was overruled to the extent that it held otherwise. Following *Whitley*, we hold that plaintiff is not limited to recovery under Section 31.

**[3]** We now consider whether plaintiff is entitled to recover for total disability under Section 29. Plaintiff contends that the deputy commissioner erred in finding plaintiff to be permanently partially disabled and in apportioning plaintiff's award on the basis of the disability ratings assigned to the two knee injuries. Plaintiff argues that the accident materially aggravated his pre-existing infirmity such that he is now totally disabled and contends that he should recover for the entire extent of that disability. We first consider the extent to which plaintiff is disabled.

Section 29 provides in pertinent part:

Except as hereinafter otherwise provided, where the incapacity for work resulting from the injury is total, the employer shall pay or cause to be paid, as hereinafter provided, to the injured employee during such total disability a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of his average weekly wages, but not more than the amount established annually to be effective October 1 as provided herein, nor less than thirty dollars ($30.00) per week.

In cases of total and permanent disability, compensation, including reasonable and necessary nursing services, medicines, sick travel, medical, hospital, and other treatment or care of rehabilitative services shall be paid for by the employer during the lifetime of the injured employee. If death results from the injury then the employer shall pay compensation in accordance with the provisions of G.S. 97-38.

The term "disability" is itself defined in Section 2(9):

> (9) Disability.— The term "disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.

Courts interpreting the meaning of disability have emphasized that diminished earning capacity, and not physical infirmity, is used to gauge disability. *Anderson v. Motor Co.*, 233 N.C. 372, 64 S.E. 2d 265 (1951). In *Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978), plaintiff suffered a fall in the course of her employment. Her physician testified at the hearing that spinal cord damage from the fall resulted in incomplete use of her extremities. He rated plaintiff's physical disability at 50% and further testified that plaintiff was "wholly incapable of resuming her former employment as a laborer." Another doctor testified that plaintiff suffered a 40% disability to the neurological system. He also estimated that there were "some gainful occupations that someone with this degree of neurological problem could pursue." The presiding deputy commissioner found that plaintiff had suffered 45% permanent partial disability and awarded her a percentage of her weekly salary for 135 weeks pursuant to Section 31(23). The Full Industrial Commission and the Court of Appeals affirmed, and plaintiff petitioned for certiorari to the Supreme Court.

Writing for a unanimous court, Justice Huskins found no support for the conclusion that plaintiff suffered no more than a 45% loss of the use of her back. The evidence was uncontradicted that the damage to the nervous system affected all her extremities with loss of sensation. The Court remanded the case, holding that an award must compensate a claimant for *all* injuries received in an accident. *Id.*

The *Little* Court also addressed issues likely to recur in further proceedings. Emphasizing that the appropriate criterion for determination of disability is a finding of plaintiff's own incapacity for work, the Court found that the Commission erred in relying on a statement by one of the physicians that "there are some gainful occupations that someone with this degree of disability could pursue":

> Uncontradicted evidence establishes that she is over fifty years of age, somewhat obese, has an eighth grade education, and at the time of her accident had been working as a laborer earning less than $2.00 per hour. The relevant inquiry under G.S. 97-29 is not whether all or some persons with plaintiff's degree of injury are capable of working and earning wages, but whether plaintiff herself has such capacity.

*Id.* In the case at bar, the deputy commissioner found as a matter of law that plaintiff's total permanent physical impairment of the left leg is 45%. The deputy commissioner made no finding as to plaintiff's disability to earn wages; rather, he made the award on the basis of Dr. Vandersea's rating of 15% permanent partial disability of the left leg. However, Dr. Vandersea testified as follows:

> Q. . . . do you have an opinion satisfactory to yourself with a reasonable degree of medical certainty as to whether or not Mr. Wilder would be totally disabled to work at a laboring type job?
>
> MR. HEDRICK: Objection.
>
> THE COURT: Overruled. You may answer.
>
> A. Yes, sir, I do have an opinion.
>
> Q. (Mr. Weeks) And what is your opinion?
>
> A. My opinion is he is totally disabled from that type of work and probably all gainful work that he's qualified.

This uncontroverted evidence establishes that plaintiff — whom the court found to be 59 years old and to have a third-grade education — is totally disabled within the meaning of the statute. Although the impairment rating of his left leg is only 45%, that figure, as the *Little* Court pointed out, is not dispositive of the question of disability to earn wages. The evidence showed plaintiff to be totally and permanently unable to earn the wages he was receiving at the time of his injury. We now consider whether and to what extent plaintiff's 1983 work-related injury caused his disability.

[4]   In *Anderson v. Northwestern Motor Co., supra,* our Supreme Court first addressed the issue of disability compensation where a

prior condition and a work-related injury combine to disable a claimant. The Court held that, where the claimant

> . . . suffers a personal injury by accident arising out of and in the course of his employment, and such injury materially accelerates or aggravates the preexisting disease or infirmity and thus proximately contributes to the death or disability of the employee, the injury is compensable, even though it would not have caused death or disability to a normal person.

*Id.* As the parties in the instant case have apparently agreed that the 1983 injury arose out of and in the course of plaintiff's employment, we do not address that issue here, but move directly to the question of causation.

Whether the injury materially aggravated the existing infirmity is once again to be determined with reference to the claimant's capacity or incapacity for work. Just as a medical disability rating may be apportioned between two causes, so may the degree of incapacity to work be a function of two completely separate causes. As Judge, later Justice, Britt noted in *Pruitt v. Knight Publishing Co.*:

> There is a distinction between a preexisting impairment independently producing all or part of final disability, and a preexisting condition acted upon by a subsequent aggravating injury which precipitates disability.

27 N.C. App. 254, 218 S.E. 2d 876 (1975), *rev'd on other grounds*, 289 N.C. 254, 221 S.E. 2d 355 (1976). This principle was later relied upon in *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981), to award a claimant recovery for only part of her total disability. In that case, plaintiff contracted byssinosis as a result of her employment with Burlington Industries; she also suffered from such non-work-related conditions as phlebitis, varicose veins and diabetes. The Industrial Commission found that 55% of plaintiff's ability to work and earn wages was due to her lung disease caused at least in part by her employment, with the remaining 45% caused independently by her other infirmities. Despite some evidence to the contrary, the majority of the Court affirmed the decision of the Commission, citing testimony by two doctors that at least half of her incapacity to work—as opposed to

her medical disability rating—was independent of her work-related problems and not aggravated by them.

The *Morrison* Court, however, was careful to distinguish the case before it from previous holdings. One situation beyond the scope of its narrow holding was set out by the Court as follows:

> (2) When a pre-existing, *nondisabling, non-job-related* condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment or by an occupational disease so that disability results, then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent.

*Id.* In such a case, where an injury has aggravated an existing condition and thus proximately caused the incapacity, the relative contributions of the accident and the pre-existing condition will not be weighed. *Anderson v. A. M. Smyre Co.*, 54 N.C. App. 337, 283 S.E. 2d 433 (1981).

In the case at bar, the only medical testimony was that given by Dr. Vandersea. He testified that the disability rating to plaintiff's left leg was 45%, with 15% attributable to the 1983 injury, but that his incapacity for work was total. Although Dr. Vandersea never specifically testified as to the relative contributions of plaintiff's 1977 and 1983 conditions to his incapacity to work, his testimony indicates that the 1983 injury materially aggravated the earlier one. Dr. Vandersea stated that there is a greater risk of damage with the new prosthesis than there would be were it plaintiff's first replacement. This likelihood was due in part to the extra bone damage during the second surgery. In addition, Dr. Vandersea testified that, if the damage were to recur, replacement of the prosthesis might—depending on the damage to the bone—be impossible and amputation would be necessary. That the 1983 injury materially aggravated plaintiff's condition is further shown by the fact that plaintiff's job performance was unaffected by the 1977 injury; after a 6-month healing period, he returned to his original duties and performed them satisfactorily until his injury some six years later. Thus, the evidence clearly indicates that plaintiff's 1983 injury aggravated a latent condition and therefore proximately contributed to his total disability. Although a normal person may not have been disabled to that ex-

tent, the entire disability is compensable. *See Anderson v. Smyre, supra.*

Because the Industrial Commission failed to take into consideration the abundance of uncontradicted evidence that plaintiff is permanently and totally disabled and that this disability was the result of a work-related injury which aggravated an existing infirmity, we remand the case for further proceedings in accordance with this opinion.

Reversed and remanded.

Judges MARTIN and PARKER concur.